USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1625 UNITED STATES OF AMERICA, Appellee, v. LAWRENCE ESTRELLA, Defendant, Appellant. ____________________ ERRATA SHEET The opinion of this Court, issued on January 9, 1997, should be amended as follows: On cover sheet page, replace issue date of "January 9, 1996" with "January 9, 1997". UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1625 UNITED STATES OF AMERICA, Appellee, v. LAWRENCE ESTRELLA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Joseph A. DiClerico, Jr., U.S. District Judge] ___________________ ____________________ Before Cyr, Boudin and Lynch, Circuit Judges. ______________ ____________________ Paul J. Haley, by Appointment of the Court, with whom Law Office _____________ __________ of Paul J. Haley was on brief for appellant. ________________ Peter E. Papps, First Assistant United States Attorney, with whom ______________ Paul M. Gagnon, United States Attorney, was on brief for the United ______________ States. ____________________ January 9, 1997 ____________________ BOUDIN, Circuit Judge. Lawrence Estrella was convicted _____________ of being a "felon in possession" of a firearm in violation of 18 U.S.C. 922(g)(1) and sentenced as an armed career criminal. Id. 924(e)(1). His appeal raises various ___ issues, the most difficult being whether he is excepted from the felon-in-possession statute as one whose civil rights have been restored and whose right to firearms has not been significantly restricted under state law. Id. 921(a)(20). ___ Estrella's long criminal record began in 1967 when he was 17 years old. Pertinently, in January 1977, he pled guilty in Massachusetts state court to assault and battery with a dangerous weapon (a motor vehicle) and received a prison sentence of 3 to 10 years. He escaped from custody on July 2, 1978, and proceeded to commit crimes in two different states for which he was convicted in 1980: armed robbery and armed assault in Massachusetts, and breaking and entering an occupied dwelling in Michigan. Estrella received a 10-to-15 year prison sentence for the Massachusetts armed robbery and assault, and a concurrent 7-to-15 year prison term for the Michigan crime. On September 28, 1987, Estrella was released from Massachusetts state prison and placed on parole until the year 2003, later reduced to June 1, 1999. He moved to New Hampshire in 1990 and his parole supervision was transferred to New Hampshire. -2- -2- He now had three "violent felony" convictions on his record. 18 U.S.C. 924(e)(1). On February 16, 1994, Estrella went to a federally licensed firearms dealership in Goffstown, New Hampshire, and purchased a .25 caliber semi-automatic pistol, allegedly as a gift for his wife. The owner of the dealership had received the gun from a distributor in Massachusetts. In the course of the purchase, Estrella completed an ATF Firearms Transaction Record, see 27 C.F.R. 178.124(c); on it he ___ answered, inaccurately, that he had not been convicted of a crime punishable by a term exceeding one year. Having learned of the purchase from the local police chief in Estrella's town, agents of the Bureau of Alcohol, Tobacco and Firearms obtained a warrant to search Estrella's residence for firearms and related documents. A search of Estrella's home occurred on March 8, 1994. Estrella arrived during the search, and on being advised of the warrant, Estrella said he wanted to cooperate and signed a waiver of his Miranda rights. He then escorted the agents to his _______ garage and showed them where the pistol was located. A federal grand jury indicted Estrella as a felon in possession, 18 U.S.C. 922(g)(1), and for making a false statement in the purchase of a firearm, id. 922(a)(6). ___ Related New Hampshire state charges were dismissed and Estrella was tried in federal court in September 1995. The -3- -3- jury convicted Estrella of violating section 922(g)(1), but deadlocked on the section 922(a)(6) count, which the government later abandoned. Because of his three violent- felony convictions, Estrella was sentenced to 216 months imprisonment. He now appeals. At the outset we reject, as an issue settled in this circuit, Estrella's argument that section 922(g) facially exceeds Congress' power under the Commerce Clause. United ______ States v. Blais, 98 F.3d 647, 649 (1st Cir. 1996). ______ _____ Estrella's "as-applied" challenge also fails, because the government offered evidence that the pistol he purchased had moved in interstate commerce. Our precedent also forecloses Estrella's cursory Tenth Amendment challenge to the federal firearm regulations. United States v. Minnick, 949 F.2d 8, _____________ _______ 10-11 (1st Cir. 1991), cert. denied, 503 U.S. 995 (1992). ____________ The main question, which we consider de novo, is whether _______ federal law prohibited Estrella from obtaining the pistol. 18 U.S.C. 922(g)(1) makes it unlawful for  any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. But 18 U.S.C. 921(a)(20) excepts from the definition of conviction [a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored . . . unless such -4- -4- pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms. But for this exception, Estrella fell within the main ban of section 922(g)(1); the troublesome issues are whether he had his civil rights restored and, if so, whether the "unless" clause applies in his case. We consider first whether Massachusetts, the jurisdiction of the "predicate offense," had restored Estrella's civil rights. (The government relied on Estrella's Michigan conviction only as a predicate offense for sentencing under section 924(e)(1), and not in his indictment for violating section 922(g)(1).) In this circuit, the civil rights that must be restored to trigger the exception are the rights to vote, to hold public office, and to serve on a jury. United States v. Caron, 77 F.3d 1, 2 _____________ _____ (1st Cir.) (en banc), cert. denied, 116 S. Ct. 2569 (1996). _______ ____________ This court has held that all three core civil rights must be restored for a person to avoid the prohibition of section 922(g). United States v. Indelicato, 97 F.3d 627, _____________ __________ 631 & n.3 (1st Cir. 1996). In Massachusetts, a convicted felon does not lose the right to vote. Mass. Gen. L. ch. 54, 86, 103B. And Estrella was no longer incarcerated in February 1994, so he could now hold public office. Mass. Gen. L. ch. 279, 30. Nevertheless, the government argues -5- -5- that Estrella's right to serve on a jury had not been sufficiently restored when he purchased the pistol. Massachusetts disqualifies from jury service any person who "has been convicted of a felony within the past seven years or is a defendant in pending felony case or is in the custody of a correctional institution." Mass. Gen. L. ch. 234A, 4(7). Estrella's conviction in 1980 for the predicate offense, the armed assault and robbery, occurred more than seven years prior to his purchase of the gun in 1994. The government claims, however, that in 1994 Estrella was still "in the custody of a correctional institution" by dint of his continuing parole status. The government cites federal decisions holding that parole constitutes "custody" for purposes such as federal habeas jurisdiction. E.g., United States v. Flynn, 49 F.3d ____ _____________ _____ 11, 14 (1st Cir. 1995) (citing cases). But "custody" has been defined broadly in this context for reasons peculiar to habeas corpus, Minnesota v. Murphy, 465 U.S. 420, 430 (1984); _________ ______ and under section 921(a)(20), state law governs whether Estrella is barred from serving on juries. Beecham v. United _______ ______ States, 511 U.S. 368 (1994). We have not found any ______ Massachusetts decisions that decide whether a parolee is barred from service. While the term "custody" is elastic, it is doubtful that a paroled prisoner would normally be described as being in -6- -6- the custody "of a correctional institution." Further, the Supreme Judicial Court has referred in passing to section 4(7) as disqualifying prospective jurors on the grounds of "incarceration or conviction of a felony within the past _____________ seven years." Commonwealth v. Tolentino, 663 N.E.2d 846, 849 ____________ _________ n.3 (Mass. 1996) (emphasis added). Massachusetts also has a statutory definition of "correctional institution," defining it in physical terms and referring to its use "for the custody . . . of committed offenders and of such other persons as may be placed in custody therein . . . ." Mass. Gen. L. ch. 125, 1(d), (e). Despite these scraps of statute and precedent, some might think it odd that a felon still on parole should be seated on a jury. Still, circumstances vary, and the immediate issue is simply whether Massachusetts imposes an automatic ban. We think this is a matter that the state supreme court could probably decide either way, but--pending such clarification--our best assessment is that Massachusetts law does not automatically disqualify a parolee seven years after conviction. As a fall-back argument, the government says that even if Estrella could in theory serve on a jury, Massachusetts law so curtails the opportunity for any ex-felon to serve as a juror that this civil right has not been sufficiently restored to satisfy section 921(a)(20). By statute, a -7- -7- Massachusetts trial judge can choose to remove from a jury panel a person convicted of any felony or other crime punishable by imprisonment of more than one year. Mass. Gen. L. ch. 234, 8. In Caron we left open the problem now _____ posed. 77 F.3d at 6.  We join other circuits in concluding that to meet the test of section 921(a)(20), each of the three core "civil rights" must be substantially, but not perfectly, restored.1 In applying this test, we are guided by the rationale behind Congress' use of "civil rights restored" as a touchstone: the notion that by reinvesting a person with core civic responsibilities, the state vouches for the trustworthiness of that person to possess firearms (unless that right is withheld). Indelicato, 97 F.3d at 630. __________ While regarding the matter as close, we think that the Massachusetts legislature has expressed the requisite, albeit unquantifiable, measure of confidence in ex-felons such as Estrella so far as concerns jury service. Our view rests not only on the language of section 8 but on what we take to be its philosophy. Almost a century ago, the Supreme Judicial Court said that:  ____________________ 1E.g., United States v. Morrell, 61 F.3d 279, 280 (4th ____ _____________ _______ Cir. 1995); United States v. Cassidy, 899 F.2d 543, 549 (6th _____________ _______ Cir. 1990); United States v. McKinley, 23 F.3d 181, 183 (7th _____________ ________ Cir. 1994); Presley v. United States, 851 F.2d 1052, 1053 _______ _____________ (8th Cir. 1988). -8- -8- in this commonwealth it is not the law that persons convicted of crime shall be permanently deprived of their civil rights. Our legislation, more humane and charitable than the law of early times, recognizes the possibility of repentance and reformation. . . . [T]here is nothing to prevent the board from putting upon the jury list the name of a former criminal, if they find him to be of good moral character and otherwise suitable. Commonwealth v. Wong Chung, 71 N.E. 292, 293 (Mass. 1904). ____________ __________ The right of the trial judge to dismiss an ex-felon under section 8 appears to be a safeguard, allowing the trial judge to dismiss the ex-felon out of hand wherever his record, or the nature of the case, warrants that course; without this provision, a judge might have to give a particularized reason. Thus viewed, this qualification does not appear to detract from the Wong Chung __________ view that in Massachusetts an ex-felon after seven years and release from jail is presumptively trusted to serve on a jury. Accord United States v. Caron, 941 F. Supp. 238, 246 (D. Mass. ______ _____________ _____ 1996). Construing a somewhat similar state restriction, two circuits have held that Michigan does not restore the civil rights of felons. United States v. Metzger, 3 F.3d 756, 759 (4th _____________ _______ Cir. 1993), cert. denied, 114 S. Ct. 1374 (1994); United States ____________ _____________ v. Driscoll, 970 F.2d 1472, 1478-79 (6th Cir. 1992), cert. ________ _____ denied, 506 U.S. 1083 (1993). But Michigan court rules require ______ automatic exclusion of felons as jurors whenever a party so moves, and also direct courts to excuse convicted felons sua ___ sponte from jury panels in criminal cases, once that ground for ______ -9- -9- exclusion is established. Metzger, 3 F.3d at 759. Michigan law _______ is thus more hostile to service by ex-felons than is the law of Massachusetts. Although all three of Estrella's core civil rights were restored by Massachusetts, his prior felony conviction still counts as a predicate offense if Massachusetts "expressly provide[d]" that he "may not ship, transport, possess, or receive firearms," 18 U.S.C. 921(a)(20), "firearm" being broadly defined to include inter alia handguns, shotguns and rifles. Id. __________ ___ 921(a)(3). Estrella objects that his parole papers nowhere expressly provide that he could not own firearms; but his civil rights were not restored by pardon, or by his parole papers, but by state statutes. And in such a situation, we look to Massachusetts law as a whole for the "express" restrictions. United States v. Sullivan, 98 F.3d 686, 689 (1st Cir. 1996). _____________ ________ Some might think it perverse to look to Massachusetts firearms law when the purchase was made in New Hampshire. But the trigger for the federal ban is the Massachusetts conviction; _______ and the ban is removed only if Massachusetts has shown the requisite confidence in the ex-felon by restoring civil rights without limiting firearms ownership. (New Hampshire, of course, is free to impose its own limitations on gun ownership within the state, but they do not control the federal ban one way or the other here.)  -10- -10- In Massachusetts, an ex-felon released from custody for more than five years can obtain a firearm identification card, Mass. Gen. L. ch. 140, 129B, which permits one to possess a handgun (any firearm with a barrel of less than 16 inches, or a short-barrel shotgun) in his residence or place of business and to possess a rifle or long-barrel shotgun anywhere. Id. ch. 269, ___ 10(a). But in Massachusetts a convicted felon cannot carry a handgun anywhere else, id. ch. 140, 125, 131, 131F; ch. 269, ___ 10(a); never can purchase, rent or lease a handgun, id. ch. ___ 140, 131A; and never can sell, rent or lease to another person any firearms, ch. 140, 122. In assessing this patchwork of restrictions, little help is provided by the federal statute's language--"may not ship, transport, possess, or receive firearms"--since this language does not tell us how much restriction is needed where some rights are permitted and others forbidden. The legislative history refers only to the "right to firearm ownership" as if it were indivisible. S. Rep. No. 583, 98th Cong., 2d Sess. 7 (1984). Possibly Congress never considered the case in which the ex- felon's right to own firearms was restricted in some ways but not others. Four of the circuits that have construed section 921(a)(20) conclude that it does not protect the ex-felon if the state continues in any way to restrict significantly the ex- felon's right to "ship, transport, possess, or receive firearms." -11- -11- Under this "all or nothing" approach, it does not matter whether the particular weapon possessed by the defendant was permitted or forbidden by state law. The Sixth and Tenth Circuits so construe the "exception to the exception," and the Seventh and Eighth come to about the same result by treating firearms privileges as one ofthecivil rightsthatmustbe restoredtotriggersection 921(a)(20).2 By contrast, the Ninth Circuit makes the federal ban apply only if the ex-felon is found to possess a weapon that state law forbids to him. United States v. Dahms, 938 F.2d 131, 134-35 _____________ _____ (9th Cir. 1991); see also United States v. Tomlinson, 67 F.3d ________ _____________ _________ 508, 513 (4th Cir. 1995); but see United States v. Clark, 993 _______ _____________ _____ F.2d 402, 404-05 (4th Cir. 1993). Thus, if Estrella had bought a long-barreled shotgun, the federal ban would not here apply. This approach has patent virtues: it respects the state's own choice; it may provide better warning to the ex-felon if he __ remains in his state of conviction; and it is probably easier for courts to administer in the first instance (by asking what state law permits as to this weapon). ____ But the Ninth Circuit's approach is less persuasive as a reading of the statute. It strains the literal language of the "unless" proviso, see Driscoll, 970 F.2d at 1480-81; and while ___ ________ the federal statute does in some measure defer to state law, it  ____________________ 2Compare Driscoll, 970 F.2d at 1480, and United States _______ ________ _____________ v. Burns, 934 F.2d 1157, 1160 (10th Cir. 1991), cert. denied, _____ ____________ 502 U.S. 1124 (1992), with United States v. Lee, 72 F.3d 55, ____ _____________ ___ 57-58 (7th Cir. 1995), and United States v. Ellis, 949 F.2d _____________ _____ 952, 955 (8th Cir. 1991). -12- -12- does not give carte blanche to the states. Indelicato, 97 F.3d _____________ __________ at 629-30. We have overridden literal language where it appeared inadvertent and undermined Congress' aim. Id. But requiring ___ that the state permit the untrammeled possession of firearms is fully consistent with the trustworthiness rationale that underpins the "civil rights restored" provision itself. The Ninth Circuit approach might give some limited protection to a defendant who remains in the state of original conviction and who honestly relies on state law; but it is not clear that this is a common case, and (as we explain below) the statute does not require willfulness at all. As for ease of administration, Congress in drafting the statute certainly did not have this value high on its list, and the plurality approach of cases like Driscoll requires more work in the first case to ________ assess the law of the state but less work in subsequent cases involving the same state. Under the plurality approach, which we choose to follow, we think that Massachusetts' ban on handgun possession by ex- felons outside the home or business is a substantial enough limit on firearms rights to preserve the federal ban. Other courts have taken the same view in assessing other state statutes. United States v. Wagner, 976 F.2d 354, 356 (7th Cir. 1992); ______________ ______ Driscoll, 970 F.2d at 1481; Burns, 934 F.2d at 1160-61. In the ________ _____ future, there might be close cases where, for example, some other -13- -13- state's restriction is arguably de minimis; but an ordinary ___________ Massachusetts felon will not be exempted from the federal ban.3 Estrella raises several other claims of error concerning his conviction and sentence. He argues first that he lacked the requisite scienter because he believed that his civil rights had been restored. But this panel is bound by the earlier ruling in this circuit that under section 922(g), "the government need not prove that the defendant knowingly violated the law; rather, it only need prove . . . that the defendant knowingly possessed firearms." United States v. Smith, 940 F.2d 710, 713 (1st Cir. _____________ _____ 1991). Accord United States v. Capps, 77 F.3d 350, 352-53 (10th ______ _____________ _____ Cir.), cert. denied, 116 S. Ct. 2568 (1996); Tomlinson, 67 F.3d ____________ _________ at 513-14 n.9 (distinguishing Staples v. United States, 511 U.S. _______ _____________ 600 (1994)). A risk of injustice exists wherever a legislature makes criminal conduct that some may believe to be lawful. But the federal felon-in-possession statute does not impose a statutory minimum term, 18 U.S.C. 924(b), so long as the defendant is not a three-time violent felon, id. 924(e)(1). Even if a jury can ___ be found to convict, sentencing judges are not likely to deal  ____________________ 3Recently, the Ninth Circuit held that Massachusetts law does not restore the civil rights of ex-felons at all.  United States v. Oman, 91 F.3d 1320 (9th Cir. 1996). The _____________ ____ court's reasoning is different than ours, consistent in some respects and not in others, but its result for Massachusetts ex-felons is the same. -14- -14- harshly with the defendant in the rare case of a truly innocent- minded violation. Estrella is not in this category. He was told when his parole supervision was transferred to New Hampshire that he could not possess firearms. Although his brief says that by February 1994 the New Hampshire parole rules had lapsed, it appears that New Hampshire state law independently prohibited Estrella from possessing the pistol and there is some indication that Estrella was so warned. Further, Estrella's outright lie on the ATF form, denying that he had ever been convicted for a crime punishable by at least one year in prison, is not the act of an innocent man. Because a mistake of law was no defense, we need not discuss at length two other claims by Estrella: that the government should not have been allowed to introduce evidence of the New Hampshire parole rules and that defense counsel should have offered evidence that the rules had lapsed. Apparently, the government's evidence was offered without objection. It is enough that neither piece of evidence had much bearing upon the issues properly before the jury or was likely to alter the result. Next, Estrella says that the search warrant did not authorize entry into his garage. The warrant approved by the district court permitted the search of the "residence of Lawrence R. Estrella, . . . more particularly described as a blue cape- style house with a breezeway connecting a two-car garage and -15- -15- located 450 feet uphill on Tiffany Hill Road . . . ." We agree with the district court that the common-sense meaning of the warrant was that the area to be searched included the garage. Accord United States v. Bonner, 808 F.2d 864, 868 (1st Cir. ______ ______________ ______ 1986), cert. denied, 481 U.S. 1006 (1987). ____________ Finally, Estrella provides an outline, but little more, of several objections to his sentence. Although we could treat those arguments as abandoned, see United States v. St. Cyr, 977 ___ _____________ ________ F.2d 698, 701 (1st Cir. 1992), the length of the mandatory sentence has led us to examine each argument on the merits, but none appears to have force. We see no reason to describe those outlined arguments, nor to advert further to several other claims of trial error that were amply developed in Estrella's brief but seem to us plainly hopeless. Affirmed. ________ -16- -16-