Gadsons v. Royal/Concord Gardens     CV-96-001-M   05/13/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


<u>Frederick and Joan Gadson</u>,
　　　Plaintiffs

　　　v.                                        Civil No. 96-1-M

<u>Royal/Concord Gardens Company</u>,
　　　Defendant


**O R D E R**

　　　Frederick and Joan Gadson bring this action against Royal/Concord Gardens, alleging that Royal/Concord Gardens violated their federally protected rights under Title VIII of the Civil Rights Act of 1968, also known as the Fair Housing Act, 42 U.S.C. § 3601, et seq. (the "FHA"). Plaintiffs claim that Concord Gardens wrongfully evicted them from their apartment based upon Mr. Gadson's race and because plaintiffs previously filed complaints to the property managers concerning certain safety issues. Concord Gardens denies any discriminatory motive in evicting plaintiffs and moves for summary judgment. Plaintiffs object.


**Standard of Review**

　　　Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling upon a party's motion for summary judgment, the court must, "view the entire record in the light most hospitable

to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party carries its burden, the burden shifts to the nonmoving party to demonstrate, with regard to each issue on which it has the burden of proof, that a trier of fact could reasonably find in its favor.  See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

To carry that burden, the nonmoving party "may not rest upon mere allegation or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue" of material fact as to each issue upon which he or she would bear the ultimate burden of proof at trial.  Id. (quoting Anderson, 477 U.S. at 256).  In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence."  Intern'l Assoc'n of Machinists and Aerospace Workers v. Winship Green Nursing Center 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).  However, "if the

non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," summary judgment may be appropriate even in a case such as this, where intent is an issue.  Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir.1994) (internal quotation marks omitted).

## Factual Background

Frederick and Joan Gadson began living at Concord Gardens in November of 1984.  On July 6, 1995, Concord Gardens notified plaintiffs that they were to discontinue their use of a "burn barrel" outside of their unit, explaining that such fires were not permitted under the Gadson's lease and that they posed a safety risk to both individuals and structures within the complex.  On August 4, 1995, Concord Gardens served plaintiffs with a "Notice of Termination of Tenancy and Requirement to Quit the Premises."  The Notice to Quit specifically referenced the July 6 letter and stated that plaintiffs' tenancy was being terminated because they had failed to comply with defendant's directive to stop using the burn barrel.

In September of 1995, following receipt of the Notice to Quit, plaintiffs filed a complaint against defendant with the United State Department of Housing and Urban Development ("HUD"), alleging race-based housing discrimination.  In that complaint, plaintiffs claimed that they were being denied their federally protected rights as tenants.  They alleged that defendant was

3

retaliating against them because of Mr. Gadson's race and because plaintiffs had filed complaints with defendant's on-site managers concerning certain safety issues. Plaintiffs also claimed that defendant had violated the terms of a 1991 conciliation agreement which HUD had brokered between the parties and under which HUD retained the right to determine whether Concord Gardens had complied with its terms.

After investigating plaintiffs' administrative complaint, HUD issued a "Notification of Determination of No Reasonable Cause" on February 13, 1996. HUD found that "reasonable cause does not exist to believe that a discriminatory housing practice has occurred." In an accompanying letter, HUD explained its bases for determining that there was no reason to believe that defendant had violated the Fair Housing Act. The following day, plaintiffs filed a nearly identical complaint with the New Hampshire Human Rights Commission ("HRC"). Like HUD, the HRC investigated plaintiffs' complaint and ultimately concluded that there was no probable cause to believe that defendant had engaged in racial discrimination.

In the interim, however, the eviction proceeding continued. The matter was tried to the New Hampshire District Court in Concord (docket no. 95-LT-309). On October 11, 1995, that court issued an order, concluding that the eviction was lawful and plaintiffs had breached the terms of their lease by continuing to

4

use the burn barrel after having been warned not to do so.  The court concluded that plaintiffs' continued use of the burn barrel posed a safety hazard and was not a permitted use of the premises under plaintiffs' lease.  The court also found that defendant initiated the eviction proceedings based upon plaintiffs' refusal to comply with the terms of the lease and not in retaliation for Mr. Gadson's petition activities or due to his race.[1]  Plaintiffs appealed that decision to the New Hampshire Supreme Court, which declined to accept their appeal.  Subsequently, plaintiffs filed this action.

## Discussion

The Fair Housing Act makes it unlawful to discriminate on the basis of race, color, religion, sex, family status, handicap, or national origin in the sale or rental of real estate.  Among other things, the FHA provides:

> [I]t shall be unlawful – (a) To refuse to sell or rent after the making of a bona fide offer, . . . or otherwise make unavailable or deny, a dwelling to any person because of race [or] color . . .. (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race [or] color.

---

[1] In a prior order, this court held that defendant had failed to establish that the New Hampshire state court's decision regarding defendant's lack of a discriminatory motivation in evicting plaintiffs was entitled to any preclusive effect in this proceeding.  Gadson v. Royal/Concord Gardens, No. 96-1-M, slip op. (D.N.H. November 20, 1996).

42 U.S.C. § 3604. Claims under the FHA may take two forms: disparate treatment and disparate impact. See Gamble v. City of Escondido, 104 F.3d 300, 304-05 (9th Cir. 1997); Mountain Side Mobile Estates v. Secretary of HUD, 56 F.3d 1243, 1250 (10th Cir. 1995); Doe v. City of Butler, Pa., 892 F.2d 315, 323 (3rd Cir. 1989); Arthur v. City of Toledo, 782 F.2d 565, 574-75 (6th Cir. 1986). Here, plaintiffs allege only the former, insofar as they claim that they were evicted because of Mr. Gadson's race.[2]

In reviewing complaints of alleged FHA violations, numerous courts have recognized that direct proof of unlawful discrimination is rarely available and, therefore, have adopted the burden-shifting analysis articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Honce v. Vigil, 1 F.3d 1085, 1088 (10th Cir. 1993); United States v. Badgett, 976 F.2d 1176, 1178 (8th Cir. 1992); Huntington Branch, NAACP v. Town of Huntington, 844 F.2d 926, 934-35 (2d Cir. 1988). See also Casa Marie, Inc. v. Superior Court of Puerto Rico, 988 F.2d 252, 269 n.20 (1st Cir. 1993)

---

[2] A "disparate treatment" case such as this one involves allegations of differential treatment based upon a forbidden characteristic, such as race, sex, or handicap. A "disparate impact" case, on the other hand, involves a facially neutral policy or practice which has the effect of discriminating against a particular protected group. To prevail under the former theory, a plaintiff must demonstrate that the defendant acted with discriminatory intent. Under a disparate impact theory, however, the plaintiff need only introduce evidence of discriminatory effect. See generally, Mountain Side Mobile Estates, 56 F.3d at 1250-51; Huntington Branch, NAACP v. Town of Huntington, 844 F.2d 926, 933-35 (2d Cir. 1988).

(discussing this burden-shifting paradigm in the context of a Title VIII disparate impact claim). Under that framework, a plaintiff must first establish a prima facie case of unlawful discrimination by demonstrating that: (a) he or she belongs to a class of citizens protected by the FHA; (b) the defendant was aware of his or her membership in that protected class; (c) the plaintiff was ready and able to purchase or rent the premises in question; and (d) the defendant refused to deal with the plaintiff (or terminated the plaintiff's lease) and the premises remained available for sale or lease. If the plaintiff carries that burden, the defendant must then rebut the presumption of unlawful discrimination by articulating a non-discriminatory basis for its actions. The burden then reverts to the plaintiff to demonstrate that the defendant's proffered justification for its conduct is pretextual and, at its core, defendant's conduct constitutes intentional discrimination. See, e.g., Honce, 1 F.3d at 1088 ("The ultimate question in a disparate treatment case is whether the defendant intentionally discriminated against plaintiff.") (citations omitted).

Assuming that plaintiffs have established a prima facie case of discrimination, defendant has responded with a legitimate and non-discriminatory justification for its conduct: plaintiffs violated the terms of their lease and disregarded defendant's directive to stop using the burn barrel. In response, plaintiffs have provided no evidence from which a reasonable trier of fact

7

could conclude that defendant intentionally discriminated against them based upon Mr. Gadson's race. While plaintiffs no doubt honestly believe that defendant discriminated against them, they have provided no factual allegations which might support that belief. Instead, they merely recite a series of suspicions and subjective opinions. <u>See, e.g.</u>, Plaintiffs' objection to summary judgment (document no. 58) at para. F ("Plaintiffs believe that the manager interfered with their rights of exercise and enjoyment of recreation which is also a part of the conciliation agreement made with HUD."), and para. H ("Plaintiffs feel that they had been targeted for eviction before their last apartment and it was due to the complaint that they had filed earlier with HUD and because of their disagreement with the manager about the [burn] barrel."). <u>See also</u> Deposition of Joan Gadson at 12-13 ("Well, I believe that you're not going to see it [i.e., the basis for plaintiffs' lawsuit], but I know underlying currents there that there is racism there whether you see it or not or whatever. I can't put my finger on it and say they said this word. It was there, and I can't really tell you how. I just know. With all the different things that were said and went on, you can just tell, especially being around black people as long as I have been. . . . I know when it's there. It's underlying. That's the best I can tell you."). <u>See generally</u> Deposition of Frederick Gadson.

8

## Conclusion

In light of defendant's proffered explanation for its eviction of plaintiffs as well as the documented conclusions of both HUD and the HRC that defendant did not engage in any unlawful discrimination, defendant has carried its burden of demonstrating that it evicted plaintiffs for a legitimate and non-discriminatory reason. In response, plaintiffs have failed to introduce any evidence from which a reasonable trier of fact could conclude that defendant's conduct was motivated by an intention to discriminate against them because of Mr. Gadson's race. Accordingly, defendant is entitled to judgment as a matter of law.

Defendant's motion for summary judgment (document no. 52) is granted. The Clerk of the Court is instructed to enter judgment in accordance with the terms of this order and close the case.

**SO ORDERED**

_____
Steven J. McAuliffe
United States District Judge

May 13, 1998

9

cc: Frederick Gadson
    Joan Gadson
    Harold E. Ekstrom, Esq.
    James M. Cassidy, Esq.