**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Danny Lynn QUALLS, Defendant–
Appellant.**

**No. 95–50378.**

United States Court of Appeals,
Ninth Circuit.

April 15, 1999.

Before: HUG, Chief Judge, BROWNING, FLETCHER, PREGERSON, HALL, THOMPSON, TROTT, T.G. NELSON, KLEINFELD, HAWKINS, and THOMAS, Circuit Judges.

Opinion by Judge CYNTHIA HOLCOMB HALL; Partial concurrence and Partial dissent by Judge MICHAEL DALY HAWKINS.

CYNTHIA HOLCOMB HALL, Circuit Judge:

In *United States v. Qualls*, —— U.S. ——, 119 S.Ct. 398, 142 L.Ed.2d 323 (1998), the Supreme Court vacated our en banc opinion in this case, and remanded it to us for reconsideration in light of *Caron v. United States*, 524 U.S. 308, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998). After careful reconsideration, we affirm Qualls' conviction.

## BACKGROUND

In 1975, Danny Lynn Qualls ("Qualls") pled guilty to assault with a deadly weapon in violation of California Penal Code § 245(a). The California court granted Qualls felony probation, and suspended further proceedings. In 1980, the California court ordered early termination of Qualls' probation upon payment by Qualls of $500 for probation costs. Although assault with a deadly weapon may be either a misdemeanor or a felony under California law, the circumstances of Qualls' case made it a felony.

Qualls' conviction was a felony because the offense was punishable by more than one year in prison, *see United States v. Horodner*, 993 F.2d 191, 194 (9th Cir. 1993), and because the conviction did not qualify as a misdemeanor under either California Penal Code § 17(b)(1) or (3). Qualls' $500 payment for early termination of his probation was merely a fee to cover the costs of Qualls' probation, and was not a "punishment other than imprisonment in the state prison." *See* Cal.Penal Code § 17(b)(1). In addition, Qualls' initial probation was not a "judgment imposing punishment other than imprisonment in the state prison." *See id.; United States v. Robinson*, 967 F.2d 287, 293 (9th Cir.1992) (citations omitted). Finally, the California court never declared Qualls' conviction a misdemeanor, nor did Qualls ever apply to have his offense declared a misdemeanor. *See* Cal.Penal Code § 17(b)(3); *People v.*

*Banks,* 53 Cal.2d 370, 1 Cal.Rptr. 669, 348 P.2d 102, 116 (1959) (in banc). Under California law, Qualls was prohibited from possessing pistols, revolvers, or other concealable firearms. *See* Cal.Penal Code § 12021(a); *People v. Loomis,* 231 Cal. App.2d 594, 596, 42 Cal.Rptr. 124 (Cal.Ct. App.1965).

In 1994, Qualls was indicted for knowingly possessing seven firearms—two revolvers, one pistol, and four rifles—in violation of the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1). At this time, California law allowed Qualls to possess any of the four rifles, but did not allow him to possess either of the two revolvers or the pistol. Our interpretation of the federal felon-in-possession statute allowed Qualls to possess any weapon that he was allowed to possess under state law. *See United States v. Dahms,* 938 F.2d 131, 134–35 (9th Cir.1991). Therefore, at the time of Qualls' trial, Qualls could have been convicted only if the jury unanimously agreed that Qualls had possessed either of the two revolvers or the pistol, but not any one of the four rifles. *See id.*

At trial, however, the district court instructed the jury that Qualls could be convicted if the jury unanimously agreed that the government had proved beyond a reasonable doubt that Qualls possessed any one of the firearms described in the indictment. At that time, the district court's instruction was erroneous. Although Qualls was convicted, there was no way to determine which of the seven weapons listed in the indictment the jury had unanimously agreed that Qualls had possessed. It was therefore impossible to determine whether Qualls had been convicted on a proper basis. Consequently, we reversed Qualls' conviction under *Griffin v. United States,* 502 U.S. 46, 52, 112 S.Ct. 466, 116

L.Ed.2d 371 (1991) (requiring verdict to be set aside when "verdict is supportable on one ground, but not another, and it is impossible to tell which ground the jury selected") (citation omitted). *See United States v. Qualls,* 108 F.3d 1019, 1024 (9th Cir.1997). We then granted en banc review in this case to reexamine our decision in *Dahms. See United States v. Qualls,* 140 F.3d 824, 825 (9th Cir.1998) (en banc) [hereinafter *Qualls II* ], *vacated,* —— U.S. ——, 119 S.Ct. 398, 142 L.Ed.2d 323.

In *Qualls II,* we reiterated our holding in *Dahms* that the federal felon-in-possession statute does not apply to a former felon who possesses a firearm that he is allowed to possess under state law. *See* 140 F.3d at 826. In so doing, we rejected the all-or-nothing interpretation of the federal felon-in-possession statute that had been adopted by other circuits. *See United States v. Estrella,* 104 F.3d 3, 7–9 (1st Cir.) (prohibiting a felon from possessing *all* firearms under 18 U.S.C. §§ 921(a)(20) and 922(g)(1) if the felon is prohibited from possessing *any* firearm under state law), *cert. denied,* 521 U.S. 1110, 117 S.Ct. 2494, 138 L.Ed.2d 1001 (1997); *United States v. Driscoll,* 970 F.2d 1472, 1480 (6th Cir.1992) (same); *United States v. Burns,* 934 F.2d 1157, 1160 (10th Cir.1991) (same).

In *Caron,* the Supreme Court adopted the all-or-nothing construction of the federal felon-in-possession statute. *See* 524 U.S. at —— – ——, 118 S.Ct. at 2010–12. In light of the rule announced in *Caron,* the Supreme Court asked us to reconsider our earlier decision in this case.

## DISCUSSION

We recognize today *Caron*'s binding interpretation of the federal felon-in-possession statute, and apply to Qualls the all-or-nothing rule announced in *Caron.*[1] When we apply retroactively the

---

1. Due process bars retroactive application of a judicial expansion of a law only if the change in the law is unforeseeable. *See Brown v. Ohio,* 432 U.S. 161, 169 n. 8, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Poland v. Stewart,* 117 F.3d 1094, 1099 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1533,

140 L.Ed.2d 683 (1998). The Supreme Court has held that a change in the law is foreseeable when circuits are split on the proper construction of a statute. *See United States v. Rodgers,* 466 U.S. 475, 484, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984). In this case, the

*Caron* rule to Qualls, we find that the district court's jury instruction was not erroneous. Under *Caron,* Qualls could be convicted for possessing any one of the seven firearms for which he was indicted. *See Caron,* 524 U.S. at ——–——, 118 S.Ct. at 2010–12. The district court's jury instruction is consistent with *Caron* because the district court instructed the jury that Qualls could be convicted if the jury found beyond a reasonable doubt that Qualls had possessed any one of the weapons listed in the indictment. Therefore, the district court properly instructed the jury.

## CONCLUSION

Based on the foregoing, we affirm Qualls' conviction.

AFFIRMED.

MICHAEL DALY HAWKINS, Circuit Judge, with whom Judges FLETCHER, PREGERSON and THOMAS join, Concurring in part and Dissenting in part:

I concur. While it is unfortunate and unfair to those making a good faith effort to comply with existing law, the majority correctly concludes that *United States v. Rodgers,* 466 U.S. 475, 484, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984), controls and thus we must apply the Supreme Court's holding in *Caron v. United States,* 524 U.S.

circuits were split on the proper construction of the federal felon-in-possession statute when Qualls committed the acts for which he was indicted and convicted. *See Driscoll,* 970 F.2d at 1480 (all-or-nothing rule); *United States v. Ellis,* 949 F.2d 952, 955 (8th Cir. 1991) (absent full restoration of firearms rights, civil rights not restored at all); *United States v. Dahms,* 938 F.2d 131, 134–35 (9th Cir.1991) (felon has right to carry under federal law any weapon that is allowed under state law); *Burns,* 934 F.2d at 1160 (all-or-nothing rule); *see also Estrella,* 104 F.3d at 7–9 (all-or-nothing rule); *United States v. Lee,* 72 F.3d 55, 57–58 (7th Cir.1995) (absent full restoration of firearms rights, civil rights not restored at all); *United States v. Tomlinson,* 67 F.3d 508, 513 (4th Cir.1995) (felon has right to carry under federal law any weapon that is allowed under state law). Therefore, a

308, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998), retroactively to Qualls.

*Rodgers* represents a departure from a time-honored principle that:

"[T]he required criminal law must have existed when the conduct in issue occurred," ... must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue," it must not be given retroactive effect.

*Bouie v. City of Columbia,* 378 U.S. 347, 354, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (citation omitted); *see also Brown v. Ohio,* 432 U.S. 161, 169 n. 8, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (due process prohibits retroactive application of judicial expansion of laws when change in law is "unforeseeable"); *Marks v. United States,* 430 U.S. 188, 191–92, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (when a court interprets a criminal statute to cover behavior not considered unlawful in the past, due process may be violated); *United States v. Potts,* 528 F.2d 883, 886 (9th Cir.1975) (en banc) (overruling circuit precedent and expanding criminal liability under statute will not be applied retroactively because of due process considerations).

change in the law was foreseeable, and due process is not violated by retroactive application of the *Caron* rule to Qualls. To the extent that our decision in *United States v. Albertini,* 830 F.2d 985 (9th Cir.1987), conflicts with *Rodgers,* we overrule *Albertini.* In *Albertini,* we stated that an individual could rely on "the latest controlling court opinion ... until that opinion is reversed, or at least until the Supreme Court has granted certiorari." *Id.* at 989. In *Rodgers,* however, the Supreme Court stated that "the existence of conflicting cases from other Courts of Appeals made review of that issue by this Court and against the position of the respondent reasonably foreseeable." 466 U.S. at 484, 104 S.Ct. 1942. Thus, under *Rodgers,* reversal or the grant of certiorari are immaterial to the due process inquiry; instead, the existence of a circuit split is the focus of that inquiry.

In rejecting the argument that "because the [1967 precedent] has been on the books in the Eighth Circuit for a number of years a contrary decision by this Court should not be applied retroactively to him," the Court held that "even if [Rodgers] could establish reliance upon the earlier ... decision, [his argument] would be unavailing since the existence of conflicting cases from other Courts of Appeal made review of that issue by this Court and decision against the position of the respondent reasonably foreseeable." *Rodgers,* 466 U.S. at 484, 104 S.Ct. 1942. *Rodgers,* like *Caron,* was a case in which the Court's dispositive interpretation of a statute expanded the scope of criminal liability in some circuits—the overruled Eighth Circuit interpretation would not have allowed Rodgers to be prosecuted.

*Rodgers* has the effect of requiring that a citizen look not to the established law of the circuit in which he resides, but to the law of the circuit taking the most expansive view of conduct prohibited by a statute, to determine what conduct he may undertake without risk of criminal prosecution until that point in time when the Supreme Court resolves any interpretative disagreement among the circuits. This can have the effect of restraining for years conduct that the Court may ultimately decide was always perfectly legal.

In this case, Qualls could have canvassed state law and "settled circuit law," *see United States v. Walsh,* 770 F.2d 1490, 1492 (9th Cir.1985), at the time he took possession of the long guns and concluded under both that his possession was not prohibited or prosecutable behavior. It seems anomalous and unfair to Qualls that had we overruled *United States v. Dahms,* 938 F.2d 131 (9th Cir.1991), ourselves in the *en banc* consideration of his case, we would likely have held we could not apply the corrected statutory interpretation retroactively to Qualls, because of the considerations expressed in *Bouie, see United States v. Qualls,* 140 F.3d 824, 832 (9th Cir.) (en banc) (Hall, J., concurring) ("Even if we were to adopt the 'all or nothing' approach of our sister circuits,

due process would block us from applying this correct reading of the statute retrospectively to Qualls."), *cert. granted and vacated,* —— U.S. ——, 119 S.Ct. 398, 142 L.Ed.2d 323 (1998); yet, because in this instance the Supreme Court has corrected our interpretation, due process considerations are no longer applicable.

The majority's holding that *Rodgers* requires us to overrule *United States v. Albertini,* 830 F.2d 985 (9th Cir.1987), compounds unnecessarily the unfairness of the rule imposed on us by *Rodgers.* We held in *Albertini* that "[i]f the due process clause is to mean anything, it should mean that a person who holds the latest controlling court opinion declaring his activities constitutionally protected should be able to depend on that ruling to protect like activities from criminal conviction until that opinion is reversed, or at least until the Supreme Court has granted certiorari." *Id.* at 989. The majority opinion's decision to overrule *Albertini* means that in the future even someone who, in the words of *Albertini,* "[i]n effect ... obtained a declaratory judgment from this court that the actions in which he engaged were lawful," *id.,* would still not be entitled to rely on that decision so long as even one other circuit court had come to a contrary conclusion.

On its facts, *Qualls* does not require that we answer anew the narrow question of *Albertini* of "whether a person whose conduct has been tried in court and vindicated on appeal can rely upon the court's decision in repeating the same conduct after receiving the appellate judgment, when the government has either filed a petition for certiorari or still has time to file such a petition, and the Supreme Court has not acted to grant or deny the petition." *Id.* at 988. *Qualls,* like *Rodgers* and unlike *Albertini,* involves a defendant who did not demonstrate actual reliance on a prior decision, or even that he had attempted to ascertain the state of the law before choosing his course of action. This court need not decide whether the holding of *Alberti-*

*ni* is trumped by *Rodgers* to reverse the panel decision in *Qualls,* and its decision to do so is in no way material to that reversal.

While I concur reluctantly in the result reached in this case, I respectfully dissent from the majority opinion insofar as it concludes that its decision today mandates that *Albertini* must be overruled.