Mercedes Bus Line, Inc., peticionaria, *v.* Tribunal de Distrito de San Juan, Hon. Emilio S. Belaval, Juez, demandado; Cesáreo Rivera y otros, interventores.

Núm. 8.—*Sometido:* Noviembre 9, 1949. *Resuelto:* Diciembre 14, 1949.

*Fernando B. Fornaris* y *Luis E. Gandía Argüelles,* abogados de la peticionaria; *Benjamín Ortiz,* abogado de los interventores, querellantes en el pleito principal.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

A tenor de lo provisto por la sección 1ra. de la Ley núm. 43 de 28 de abril de 1930 (pág. 357), según ha sido enmendada por la núm. 84 de 12 de mayo de 1943 (pág. 197)[1] Cesáreo Rivera, Gilberto Bonano Vélez, Justo Quiles Martínez y Anastacio Ortiz Arroyo radicaron ante la Corte Municipal de San Juan una querella contra la Mercedes Bus Line, Inc., en la cual alegan haber trabajado como chóferes de los ómnibus de ésta, habiendo sido sus servicios contratados sin tiempo determinado a base de un sueldo de $4.50 diario; que el 19 de septiembre de 1947 la querellada, sin justa causa y sin previo aviso, les despidió de sus empleos y que no les ha satisfecho los sueldos correspondientes a un mes por concepto de indemnización. Suplican se condene a la querellada a satisfacer a cada uno de ellos la suma de $126 como compensación por despido ilegal, más las costas y honorarios

[1] La sección 1 de la Ley núm. 43 de 1930, según ha sido enmendada en 1943, reza así:

"Todo empleado de industria o de cualquier otro negocio lucrativo, contratado sin tiempo determinado, que fuere despedido de su cargo sin justa causa, tendrá derecho a recibir de su patrono, en adición al sueldo que hubiere devengado, el sueldo correspondiente a un mes por concepto de indemnización; *Disponiéndose,* que las disposiciones de esta Ley no serán aplicables a los mancebos ni factores de comercio, para los cuales regirá lo dispuesto en el Código de Comercio."

de abogado. Visto el caso, la Corte Municipal 'declaró sin lugar la querella. Apelado el mismo por los querellantes, el tribunal recurrido dictó sentencia condenando a la querellada a pagar a cada uno de aquéllos la suma de $135 (sic), más las costas y $100 para honorarios de abogado. De la sentencia así dictada la querellada ha acudido ante nos por *certiorari*. En realidad, la única cuestión envuelta en este recurso es si el despido de los querellantes lo fué o no por causa justificada.

██ Conforme dijimos en *P. R. Cap & Tires Sales* v. *Tribunal de Distrito,* 68 D.P.R. 398, 403, ''. . .es a los tribunales de justicia a quienes incumbe, después de tomar en consideración los hechos y circunstancias especiales de cada caso, determinar si la despedida del trabajador estuvo justificada o si fué caprichosa o injustificada. La obligación de indemnizar al obrero que ha sido despedido del trabajo, cuando el contrato se hizo sin tiempo determinado, no es absoluta. Esa obligación surge cuando se le despide caprichosa e innecesariamente, sin una causa, razón o motivo que justifique el que el patrón prescinda de los servicios del obrero.'' En vista de ello se hace necesario examinar la prueba aducida por las partes. La de los querellantes tendió a demostrar que una noche del mes de septiembre de 1947 el administrador de la querellada les reunió con el propósito de explicarles la forma en que debían ser interpretadas y aplicadas por ellos las reglas que acababan de ser aprobadas por ésta, en particular respecto a cómo debía cobrarse a los pasajeros que salieran de Eleanor Roosevelt para San Juan y a los que regresaban de San Juan a ésta;(2) que dichas reglas fueron puestas en

---

(2) Según dichas reglas, el pasajero que tomara una guagua en el trayecto de Eleanor Roosevelt a la Parada 26 pagaría al subir y el que tomara la guagua de la Parada 26 hasta San Juan pagaría al subir y recibiría una contraseña. El que no tuviera contraseña y se bajara antes de la Parada 20 no pagaría al bajarse, pero el que no tuviera la contraseña y se bajara después de la Parada 20 pagaría cinco centavos más al bajarse. El que tuviera contraseña y se bajara en cualquier sitio de la Parada 26 hasta San Juan no pagaría al bajarse. En la ruta de regreso de San Juan a Eleanor Roosevelt las reglas contenían disposiciones algo parecidas.

vigor a la mañana siguiente; que esto les trajo confusión, al extremo de que muchas veces ellos tenían que poner de su propio bolsillo el dinero que les faltaba; y que entregaron siempre a la querellada todo el dinero que cobraron a los pasajeros.

La de la querellada fué al efecto de que teniendo conocimiento de algunas irregularidades cometidas por sus chóferes procedió a aprobar ciertas reglas que debían ser seguidas por éstos; que en la noche del 8 de septiembre de 1947 su administrador, Juan Torres Becerra, reunió a los doce chóferes que para aquel entonces trabajaban para ésta y les explicó en detalle el alcance de las mismas; que cuando todos los chóferes manifestaron entenderlas debidamente, les entregaron copias de las reglas y les exigieron firmar un volante haciéndolo así constar; que posteriormente casi todas las noches dicho administrador reunía nuevamente a los chóferes y les aclaraba cualesquiera dudas que éstos pudieran tener sobre dichas reglas; que a fin de determinar si los chóferes procedían de acuerdo con las mismas designó lo que ella calificó de "inspectores fantasmas", quienes sin ser conocidos por los chóferes debían abordar los vehículos guiados por éstos y ver si registraban todos los pasajeros que subían a las guaguas y pagaban; que el 16 de septiembre de 1947 los inspectores abordaron a la 1:45 p.m. en la Barriada Eleanor Roosevelt la guagua que Gilberto Bonano conducía en dirección a San Juan y notaron que 51 pasajeros subieron y pagaron y que Bonano sólo registró 46; que el 17 de septiembre tomaron la guagua conducida por Anastacio Ortiz y vieron que 27 pasajeros pagaron y que éste sólo registró 23; que el 18 de septiembre tomaron el vehículo conducido por Justo Quiles y vieron que 20 pasajeros pagaron y que Quiles sólo marcó 17; y que el mismo día abordaron la guagua conducida por Cesáreo Rivera y notaron que 19 pasajeros pagaron y que Rivera sólo registró 15.

En su sentencia(³) el tribunal a quo hizo constar, entre otras cosas, lo siguiente:

"... Los inspectores fantasmas encontraron que los chóferes estaban incurriendo en ciertas deficiencias, la más grave entre ellas, que dejaron de apuntar en el registro mecánico 4 ó 5 de los pasajeros que recogieron dentro de la ruta asignada.

" . . . . . . .

"Un análisis sereno de toda la evidencia sometida nos lleva a concluir, que los errores cometidos por los despedidos podrán ser resultado del cambio repentino que hizo el patrono de todo su sistema de cobro. Es indudable que no podemos diseñar para el hombre un tipo de perfectibilidad semejante al que se diseña para una máquina. También ha dejado un poco perturbado nuestro ánimo de juzgador la aparición de los inspectores fantasmas que desfilan por la prueba de la querellada en el presente caso."

Luego de ese razonamiento condenó a la querellada a pagar a los querellantes las cantidades que hemos indicado más arriba.

Es principio conocido en nuestro derecho que la apreciación de la prueba hecha por una corte inferior no será alterada o modificada por este Tribunal en forma alguna, a menos que se nos convenza de que en tal apreciación dicho tribunal cometió manifiesto error o actuó movido por pasión, prejuicio o parcialidad. *González* v. *Vélez*, 68 D.P.R. 904. El presente caso no constituye una excepción, ya que no encontramos que en el mismo hubiera manifiesto error, ni que el tribunal sentenciador actuara movido por pasión, prejuicio o parcialidad. Empero, conforme dijimos en *Rodríguez* v. *Pagán*, 67 D.P.R. 345, 348, "Una cosa es la apreciación de la prueba y otra es el efecto legal de la misma." Si como indicó el tribunal inferior, *"un análisis sereno de toda la evidencia sometida nos lleva a concluir que los errores cometidos por los despedidos podrán ser resultado del cambio repentino que hizo el patrono de todo su sistema de cobro"* (bastardillas nuestras), no vemos en verdad cómo pudo declarar con lugar la querella y dictar sentencia condenando a la quere-

---

(³) El tribunal inferior no emitió opinión.

llada a pagar a los querellantes las cantidades reclamadas. Tampoco podemos convenir con el tribunal recurrido en que el haber dejado los querellantes de registrar cierto número de pasajeros y la apropiación por dichos querellantes de ese dinero constituya un mero error o deficiencia. No es menester, por tanto, hacer un gran esfuerzo para concluir que la querellada estuvo justificada en despedir a los querellantes. La negligencia, la incompetencia, la deslealtad y la desobediencia a las reglas y órdenes del patrono, son motivos justificados para despedir a un empleado. *Blanes* v. *Tribunal de Distrito,* 69 D.P.R. 113; *Watkins* v. *Cochran,* 168 S.W.2d 351, 353; 35 Am. Jur., sec. 40, pág. 473. La falta de confianza en éste igualmente lo es. *P. R. Cap & Tires Sales Co.* v. *Tribunal,* supra. Si las ya dichas son causas justificadas para el despido de un empleado, la falta de honradez en éste sin duda también lo es. Citas supra.

Aunque, como antes indicamos, no intervenimos generalmente con la apreciación de la prueba hecha por el tribunal inferior, nuestro criterio es que éste erró al dar eficacia a la que tuvo ante sí y que la justa causa para el despido de los querellantes quedó plenamente demostrada.

*Debe anularse la sentencia dictada por el tribunal inferior y en su lugar dictarse otra declarando sin lugar la querella.*