# United States Court of Appeals
## For the First Circuit

No. 02-1852

NYDIA ESTADES-NEGRONI,

Plaintiff, Appellant,

v.

THE ASSOCIATES CORPORATION OF NORTH AMERICA,
ASSOCIATES FINANCIAL SERVICES,
ASSOCIATES FIRST CAPITAL CORPORATION,
ASSOCIATES CORPORATION OF PUERTO RICO, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Alfredo Fernández-Martínez, with whom José A. Fernández-Paoli and Delgado & Fernández, LLP were on brief, for appellant.
Heidi L. Rodríguez-Benítez, with whom Jorge I. Peirats, and Pietrantoni Méndez & Alvarez, LLP were on brief, for appellees.

October 1, 2003

**TORRUELLA**, **Circuit Judge**.  Plaintiff-appellant Nydia Estades Negroni ("Estades") brought an action against the Associates Corp. of North America ("Associates Corporation"), Associates Financial Services ("Associates"), Associates First Capital Corp., and Associates Corporation of Puerto Rico (collectively "defendants"), alleging unlawful discrimination because of her age and disability in contravention of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (2003), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182-12189 (2003), and several provisions of Puerto Rico law. The district court granted summary judgment in favor of the defendants; Estades now appeals.  After careful review, we affirm.

## I.  Background[1]

Estades was hired by Associates in 1986.  Between 1989 and 1990, she became aware of financial irregularities regarding loans carried out by some of her co-workers in Associates' Arecibo I branch.  In 1992, Estades reported the irregularities to Juan Irizarry, Group Assistant Vice President at Associates, through his secretary, Haydeé López.  As a result of Estades's allegations of fraud, several audits were performed that resulted in the firing of several of her co-workers, including her supervisors, in 1993.

---

[1] We largely reproduce the facts as stated in the district court's opinion, Estades Negroni v. Assocs. Corp. of N. Am., 208 F. Supp. 2d 144, 145 (D.P.R. 2002), but present them in the light most favorable to the plaintiff. Rosenberg v. City of Everett, 328 F.3d 12, 17 (1st Cir. 2003).

-2-

After she reported the irregularities, Estades alleges she experienced a "pattern of discrimination." According to Estades's brief, "her supervisors were bothered by Estades's whistle-blowing activities." Estades contends that, as a result, her workload was increased to the point of being "excessive." Estades also claims that she requested her workload be reduced to its original level or that an assistant be hired; her employer refused both requests. She also alleges that the director of human resources, at least one of her supervisors, and several of her co-workers at Associates made "age motivated remarks."[2]

In March 1996, Estades experienced chest pains and visited a doctor, who diagnosed her with severe depression. On March 21, 1996, Estades, following her doctor's recommendation, reported to the State Insurance Fund ("SIF"). The SIF examined Estades and found her to be disabled; she was placed on leave to receive medical treatment.

On April 9, 1996, Estades requested short-term disability benefits under Associates' employee benefits policy (the "Policy"). The Policy was administered by Associates Corporation and managed by Prudential Healthcare Group ("Prudential"). Estades received

---

[2]   Estades's brief extensively cites to her own deposition and those of Irizarry and Wilfredo Ortiz Guerra in cataloguing the allegedly ageist remarks made by her supervisors and co-workers. Most of the references in her brief are to depositions that were conducted entirely in Spanish and for which no certified translation is in the record.

short-term disability benefits for the maximum period possible, from March 1996 to September 1996.

On May 2, 1996, Carmen Hernández, a social worker with the SIF, interviewed Estades in connection with her request for treatment. SIF referred Estades to Dr. Pablo Pérez Torredo, a psychiatrist, for evaluation. On June 18, 1996, Dr. Pérez Torredo issued his final psychiatric report, diagnosing Estades with adaptive disorder with mixed emotional symptoms and recommending that she receive additional psychotherapeutic treatment.

On August 23, 1996, Associates notified Estades that her short-term disability benefits would expire on September 27, 1996. Associates further informed Estades of her right to apply for long-term disability benefits ("LTD") and recommended that she also apply for Social Security Disability Insurance benefits ("SSDI") to supplement her income.

On September 25, 1996, Estades applied for LTD. In her application, Estades certified that her emotional state did not allow her to concentrate on and perform her job functions. Furthermore, she stated that the date for her return to work was not available, and that she did not expect to return to any other occupation.

In a letter dated January 7, 1997, Prudential denied Estades's request for LTD based on lack of medical evidence supporting her claim that her condition kept her from performing

her duties as Branch Operations Manager. The denial letter informed her of her right to appeal the denial of LTD. Estades appealed Prudential's decision in a letter dated February 25, 1997.

On March 19, 1997, Estades's employment with Associates was terminated with an effective date of February 28, 1997, because her short-term disability benefits had expired, her application for LTD had been denied, and she had not reported to work. On April 15, 1997, Prudential reconsidered its denial of LTD and approved Estades's request retroactively to September 18, 1996. Estades was reinstated in her employment with Associates with LTD status. As part of her LTD benefits, Estades was entitled to receive 60 percent of her salary while undergoing treatment. On May 2, 1997, Estades sent a letter to Associates stating her desire to return to work on June 1, 1997.

Prudential informed Estades that if her recovery was delayed she could be required to apply for SSDI. She applied, and on July 7, 1997, she was granted SSDI retroactively to September 1996, and the Social Security Administration found that, under its rules, she had become disabled on March 20, 1996.

On April 29, 1998, Aetna US Healthcare ("Aetna"), Associates' new health insurance carrier, sent Estades a letter stating that, based on the medical information in their possession, her claim for LTD had been approved. Aetna further informed Estades that, under a plan provision, she was required to file for

SSDI benefits and to provide them with proof of application. The letter further informed Estades that failure to comply would result in suspension and termination of benefits.

Rather than comply with Aetna's request, Estades told Aetna to ask Prudential for a copy of her SSDI award letter. Estades stated that she refused to provide Aetna with a copy of the letter because "they had been so bad to her."

On June 2, 1998, Aetna sent Estades a second letter requesting that she inform the company of the status of her SSDI application. On August 11, 1998, Aetna sent Estades a letter informing her that her LTD benefits were terminated effective July 31, 1998, because Aetna had not received from Estades any proof that she had at least applied for SSDI. Aetna further informed Estades that she was entitled to petition for a review of that decision within sixty days. She appealed, but the appeal was denied on October 1, 1998, because Aetna had not received a copy of her SSDI award letter. After October 1, 1998, Estades did not make any further efforts to obtain LTD. Estades has not contacted Associates regarding her availability or desire to return to work since her LTD was terminated in August 1998.

Estades is currently undergoing psychiatric treatment and has not made any attempt to find another job because her psychiatrist has told her she is still unable to work.

On June 5, 1998, Estades filed a complaint against defendants alleging that they violated the ADEA and the ADA, and raising supplemental law claims under Puerto Rico Law.[3]

The defendants moved for summary judgment on all claims. The motion was referred to a magistrate judge, who recommended that the court grant the motion for summary judgment. Estades filed her objections to the report and recommendation.

On May 30, 2002, the district court issued an opinion and order adopting the magistrate judge's report and recommendation and dismissing Estades's causes of action under the ADEA and the ADA. The district court dismissed the supplemental state law claims without prejudice because no federal claims to ground original jurisdiction remained before the Court. Estades now appeals the district court's grant of summary judgment and dismissal of her state claims.

## II. <u>Analysis</u>

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Fed. R. Civ. P. 56(c) (2003). We review a grant of summary judgment de novo, construing the record in the light most favorable

---

[3] Plaintiff filed her complaint before Aetna terminated her LTD benefits.

to Estades.  <u>Rosenberg</u>, 328 F.3d at 17.  We may affirm the district court's decision on any grounds supported by the record.  <u>Rodríguez</u> v. <u>Smithkline Beecham</u>, 224 F.3d 1, 5 (1st Cir. 2000).

### A.  <u>Age Discrimination Claim</u>

Estades argues that the district court erred in granting summary judgment on the ADEA claim because she presented direct evidence of age discrimination.  In the alternative, Estades claims summary judgment should not have been granted with regard to the prima facie case because a genuine issue of material fact exists regarding whether she was actually or constructively discharged.

The ADEA makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1) (2003).  In an ADEA case, the plaintiff bears the burden of proving he would not have been discharged "but for his age."  <u>Serrano-Cruz</u> v. <u>DFI P.R., Inc.</u>, 109 F.3d 23, 25 (1st Cir. 1997).  "To survive summary judgment, the employee must first either present direct evidence of discrimination or make out a prima facie case of discrimination" under the familiar <u>McDonnell Douglas</u> burden-shifting paradigm.  <u>Bramble</u> v. <u>American Postal Workers Union, Providence Local</u>, 135 F.3d 21, 25 (1st Cir. 1998); <u>see also</u> <u>McDonnell Douglas Corp.</u> v. <u>Green</u>, 411 U.S. 792, 802-05 (1973).

In the discrimination context, the "term 'direct evidence' normally contemplates only those statements by a

-8-

decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." Vesprini v. Shaw Contract Flooring Servs., 315 F.3d 37, 41 (1st Cir. 2002) (internal quotation marks and citations omitted). Estades's brief purports to present many ageist statements made by the head of human resources, her supervisors, and co-workers, which we must evaluate to determine if she has presented direct evidence of age discrimination. Cf. Wennik v. PolyGram Group Distrib., 304 F.3d 123, 132-33 (1st Cir. 2002) (evaluating interviewer's comment, "When I get over 55, there's no way you'll find me in this business," to determine whether it constituted direct evidence of discrimination). The record contains a certified translation of Estades's own deposition, where she refers to comments made by Jesús Navarro and Enoch Toro, two of her former supervisors, as well as comments by Aurora Medina, Associates' Director of Human Resources at the time. Estades's brief cites extensively to the deposition testimony of Irizarry, which it labels as being of "particular importance," and also to that of Wilfredo Ortiz Guerra, Manager of Associates. The record on appeal does not contain certified translations of the relevant portions of either Irizarry's or Ortiz's testimony. As we have made clear before, "this Court may not consider non-English documents unless a translation is provided." Ramos-Báez v. Bossolo-López, 240 F.3d 92, 94 (1st Cir. 2001); see also 1st Cir. R. 30(d) ("The court will

-9-

not receive documents not in the English language unless translations are furnished."). Thus, we must ignore the untranslated evidence, which constitutes the bulk of the comments Estades relies on in making her case, and resolve the case as though the evidence did not exist. See López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (refusing to consider a deposition excerpt "part of the record on summary judgment" where excerpt was in Spanish and no translation was provided).[4] Cf. United States v. Rivera-Rosario, 300 F.3d 1, 6 (1st Cir. 2002) (noting that "meaningful appellate review" is unavailable when significant parts of the record are in a foreign language and addressing the translation issue in the criminal context).

Without the untranslated evidence, Estades cannot establish a case of discrimination based on direct evidence. Most of the direct evidence she presents on appeal is drawn from the untranslated material. If we consider the English language record, the only evidence of ageism is Estades's own deposition testimony about comments made to her by her former direct supervisors, Navarro and Toro, and by Medina.[5] Given that stray comments are

_____

[4] There is no indication that the district court considered the untranslated evidence in reaching its conclusion.

[5] Specifically, Estades testified in her deposition that when she complained to Medina about her workload, Medina replied "'Oh, you're already too old, Nydia.'" Estades stated that Medina made that comment to her "several times" but that Estades never complained to anyone at Associates about the comments.

insufficient to meet a plaintiff's burden in a discrimination case and the lack of any evidence linking the translated remarks to the adverse employment decision, we can easily affirm the grant of summary judgments with respect to the direct evidence of discrimination.[6] See, e.g., Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996) ("direct evidence does not include stray remarks in the workplace, particularly those made by nondecisionmakers or statements made by decisionmakers unrelated to the decisional process itself").

Estades fares no better under the McDonnell Douglas burden shifting framework. Even if we assume that Estades met her burden of presenting a prima facie case of discrimination,[7] the

---

[6] Although the alleged comments by Medina may suggest some linkage between ageism and the adverse employment decision given her position as head of human resources, they do not alone rise to the level of a "smoking gun." Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 421 (1st Cir. 1996) (equating direct evidence to a smoking gun, giving as an example "an admission by the employer that it explicitly took actual or anticipated pregnancy into account in reaching an employment decision"). Medina's comments were in response to Estades's complaints about having too much work, and do not amount to an admission by the ultimate decisionmaker that Estades's age resulted in her termination.

[7] We assume arguendo that Estades was terminated, and thus suffered an adverse employment action. The district court's grant of summary judgment was predicated on the lack of an adverse employment action, which would indeed prove fatal to Estades's case, which was based primarily on direct evidence of discrimination, and, in the alternative, on a prima facie case of discrimination. See, e.g., Patten v. Wal-Mart Stores E., Inc., 300 F.3d 21, 25 (1st Cir. 2002) (indicating that where a plaintiff is presenting a case of discrimination based on direct evidence he "need prove only that the discriminatory action was a motivating factor in an adverse employment decision") (emphasis added);

-11-

burden shifts to Associates to articulate a legitimate, non-discriminatory reason for the termination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). Associates presented evidence that Estades's termination was due to her own knowing non-compliance with Aetna's procedural requirement that she send the SSDI award letter. Once Aetna terminated Estades's LTD benefits and she failed to report to work, she was no longer an employee of Associates. It is entirely legitimate and non-discriminatory to terminate an employee for failing to comply with an insurance carrier's procedural requirements for receipt of LTD benefits and subsequently failing to report to work or even contacting the employer.

The burden thus shifts back to Estades to prove that Associates' proffered reason is mere pretext for discrimination. Id. at 253. This final burden in the McDonnell Douglas framework "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); Thomas v. Sears, Roebuck & Co., 144 F.3d 31, 33 (1st Cir. 1998). Thus, evidence constituting a prima facie case along with

González v. El Día, Inc., 304 F.3d 63, 68 n.5 (1st Cir. 2002) (noting that in order to establish a prima facie case of discrimination under the ADEA, the plaintiff must show, among other things, that "the employer subjected her to an adverse employment action (e.g., an actual or constructive discharge)") (emphasis added). We affirm the grant of summary judgment on other grounds, however.

-12-

evidence of pretext can defeat summary judgment "provided that the evidence is adequate to enable a rational factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action."  Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 22 n.5 (1st Cir. 1999).

In order to meet her burden of demonstrating that Associates' "proffered reason for the dismissal was pretextual and that the true reason was an age-based animus," Estades must present "evidence . . . of such strength and quality as to permit a reasonable finding that the . . . [termination] was obviously or manifestly unsupported." Ruiz v. Posadas De San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1997) (internal quotation marks and citation omitted).  Evidence of pretext includes "[e]vidence of biased comments." Rivera-Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 27 (1st Cir. 2001).  Although the translated evidence includes Estades's own testimony about Medina's repeated comments regarding her age, these comments are insufficient to generate a factual dispute as to whether the asserted reason for her termination -- her failure to provide the evidence of her SSDI award letter and her refusal to return to work or contact her employer -- was a pretext for age discrimination.

We thus affirm the grant of summary judgment on the age discrimination claim.

### B.  **Failure to Accommodate Claim**

Estades also claims that Associates violated the ADA in refusing to grant the accommodations she requested, namely reduction of her workload or provision of an assistant.[8]  The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  An employer violates the ADA if it "knows of a disability yet fails to make reasonable accommodations." Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999).   To survive summary judgment on her "reasonable accommodation claim, [Estades] must produce enough evidence for a reasonable jury to find that (1) [s]he is disabled within the meaning of the ADA, (2) [s]he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [Associates], despite knowing of [Estades]'s disability, did not reasonably accommodate it."  Rocafort v. IBM Corp., 334 F.3d 115, 119 (1st Cir. 2003).  We focus our attention on the third prong: whether Associates knew of Estades's disability yet failed to accommodate her.[9]

---

[8]  Neither Estades's complaint nor her briefs before this Court present any claim that she was discharged because of her disability.  Rather, she focuses on the issue of accommodation.

[9]  Estades also discusses her qualification to perform the job. The district court states that "Estades failed to proffer sufficient evidence that she could perform her duties with or

-14-

Before she was diagnosed with depression, Estades requested a reduced workload or the aid of an assistant. Under the ADA, requests for accommodation must be express and must be linked to a disability. See Cruz Carrillo v. AMR Eagle, Inc., 148 F. Supp. 2d 142, 146 (D.P.R. 2001). An employer need not provide accommodations where it does not know an employee has a disability. See Reed v. Lepage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001) ("The employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace."); see also EEOC, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, FEP (BNA) 405: 7601, at 7605-06 (March 1, 1999) ("before addressing the merits of the accommodation request, the employer needs to determine if the individual's medical condition meets the ADA definition of "disability," a prerequisite for the individual to be entitled to a reasonable accommodation"), available at http://www.eeoc.gov/docs/accommodation.html. Associates did not know Estades was disabled when she requested the accommodation -- she had not yet been diagnosed with a disability

without any reasonable accommodations as required by the ADA," but makes no further comment on this prong. Estades Negroni, 208 F. Supp. 2d at 148. Because we find Estades failed to present sufficient evidence on the third prong, we need not address whether she could perform her duties. Cf. Rocafort, 334 F.3d, at *9 ("assum[ing], without deciding," that defendant met his burden with regard to the first two prongs where plaintiff failed to meet burden on the third prong).

at the time she sought a reduced workload or an assistant. Although Estades argues that her depression was evident when she requested the accommodation, the record does not support this claim. Finally, there is no evidence that the request was expressly repeated after Estades was diagnosed with a mental disability.

We uphold the grant of summary judgment on the ADA claim because Associates was unaware of Estades's disability when it denied her requested accommodation.

### C.  State Law Claims

The district court acted "well within its broad discretion" in refusing to exercise supplemental jurisdiction and dismissing without prejudice the state law claims because no federal claims remained. Lares Group, II v. Tobin, 221 F.3d 41, 45 (1st Cir. 2000).

### III.  Conclusion

For the foregoing reasons, the district court's grant of summary judgment is affirmed.

**Affirmed**.