Alma **GONZALEZ VILLANUEVA**
Plaintiff

v.

**WARNER LAMBERT, et als. Defendants**

**No. CIV. 01–1322SEC.**

United States District Court,
D. Puerto Rico.

Sept. 30, 2004.

---

Aurimir Arocho–Torres, Manuel Porro Vizcarra Law Office, Guaynabo, PR, for Alma Gonzalez Villanueva, Plaintiff.

Carl E. Schuster, Schuster Usera & Aguilo LLP, Lourdes C. Hernandez–Venegas, Schuster Usera & Aguilo LLP, San Juan, PR, Rafael E. Lazaro–Castro, Schuster Usera & Aguilo LLP, San Juan, PR, for Warner–Lambert Company, and/or Pfizer Global Manufacturing, John Doe 01CV1322, Plan Administrator, Medical Card System, Inc., Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

This is an action for benefits under the Employee Retirement Income Security Act, 29 U.S.C. § § 1001, *et seq.* ("ERISA"), for compensation on account of an alleged failure to provide notice of continuation of medical plan coverage under the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C.A. §§ 1161 *et seq.* ("COBRA"), and for dismissal without just cause pursuant to Puerto Rico Act No. 80 of May 30, 1976, 29 L.P.R.A. § § 185a *et seq.* (Act. No. 80), brought by Plaintiff Alma González Villanueva against her former employer, Pfizer Pharmaceutical, Inc. (formerly Warner–Lambert), and their plan administrator, Medical Card System, Inc. (MCS).

Now pending before the Court is Defendants' motion for summary judgment (Docket # 29). Plaintiff has timely opposed said request (Docket # 40). Defendants have filed a reply (Docket # 43), and Plaintiff has filed a sur-reply (Docket # 46). In addition, Defendants have also filed a motion supplementing their motion for summary judgment (Docket # 47) and, in turn, Plaintiff has also supplemented her opposition (Docket # 48). After a careful review of the parties' filings and the applicable law, we find that Defendants' motion must be **GRANTED.**

## Background

Plaintiff was an employee of Warner–Lambert who was a participant in several benefits plans maintained by said company for its employees, including the medical plan, the Short Term Disability (STD) Benefits Plan, and the Long Term Disability (LTD) Benefits Plan. Due to a medical condition, Plaintiff commenced sick leave in August of 1998, and later began to receive STD benefits. Eventually, on January 4, 1999, she applied for LTD benefits. After compiling and evaluating the medical evidence supplied by Plaintiff and her employer, as well as the results of an independent evaluation, Co-defendant MCS denied Plaintiff's application for long term benefits, inasmuch as she was found not to be totally disabled under said Plan. Plaintiff appealed said decision. Ultimately, however, the decision was upheld on appeal.

In the meantime, in September of 1999, Pfizer received a copy of a notification from MCS addressed to Plaintiff regarding her denial of LTD benefits. Since Plaintiff had been absent from work in excess of one (1) year and had exhausted all medically related leave, Pfizer considered Plaintiff to be voluntarily terminated, and proceeded to issue the corresponding termination documents, including the termination of medical plan benefits, and the issuance of the corresponding notice of employee rights in regard to the Company's benefits, including the COBRA notice.

However, due to an error in the internal notification procedure, Plaintiff's employment was not terminated until February 29, 2000, even though she had been notified in September of 1999 that her medical plan benefits would cease as of October 1, 1999. Notwithstanding, at the time of her termination in February 2000, Plaintiff was sent the corresponding COBRA notice. Subsequently, Plaintiff was approved

for Social Security Disability (SSD) benefits and Pfizer took the decision to reinstate her retroactively to the medical plan coverage. Pfizer reinstated Plaintiff's benefits effective March 1, 2000, exactly one day after her termination.

On March 7, 2001 Plaintiff filed a civil action before the Puerto Rico Court of First Instance, Bayamón Superior Part alleging that Defendants had unlawfully denied her LTD benefits, had failed to properly notify her of her rights under COBRA, and had terminated her employment without just cause. Thereafter, on March 20, 2001, Defendant Warner–Lambert removed said claim to this Court based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1446.

**Standard of Review**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir.1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón*, 54 F.3d 980, 983–984 (1st Cir.1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (citing *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machs.*, 42 F.3d at 684.

■ While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case," *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mut. Life Assurance Co. of Am.*, 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue. ... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz*, 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

■ Local Rule 56(b), moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Unless the non-moving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.; Cosme–Rosado v. Serrano–Rodriguez*, 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." *See, e.g., Orbi. S.A. v. Calvesbert & Brown*, 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judg-

ment, "it launches the nonmovant's case down the road toward an early dismissal." *Tavárez v. Champion Prods., Inc.*, 903 F.Supp. 268, 270 (D.P.R.1995).

## Applicable Law and Analysis

### Plaintiff's Claims under ERISA

■ ERISA is a "comprehensive and reticulated statute." *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980). It governs the rights and responsibilities of parties in relation to employee pension and welfare benefits plans. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 650–51, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Said statute establishes a cause of action for plan participants and other beneficiaries "to recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] right to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(a)(1)(B).

■ In the instant case Plaintiff has not contested the fact that she was reinstated retroactively to her medical plan coverage as soon as Co-defendant Pfizer received notice that Plaintiff was approved for SSD benefits. As a matter of fact, said reinstatement was granted up to March 1, 2000, exactly one day after her official termination. Therefore, we cannot conclude that Plaintiff can sustain a claim for benefits under ERISA since she has already been made whole.

Recently, the Court of Appeals for the First Circuit resolved a similar controversy. In *Estades Negroni v. Assoc. Corp. of North Am.*, 377 F.3d 58 (1st Cir.2004), the Court held that a plaintiff did not suffer an adverse employment action, as required for a *prima facie* case under the Age

Discrimination in Employment Act (ADEA), when she was retroactively reinstated to the benefits plan. In *Estades–Negroni*, the plaintiff was diagnosed with adaptive disorder, depression, and mixed emotional distress symptoms. *Id.* at 61. Consequently, the State Insurance Fund found her to be disabled and her employer granted STD benefits under her employer's benefits policy. *Id.* Thereafter, she was informed of her right to request LTD benefits. Subsequently, her request for LTD benefits was denied and she was terminated from her post. *Id.* However, on appeal the plaintiff was granted LTD benefits and her employer reinstated her benefits retroactive to the date she was terminated. *Id.* at 62. Although the *Estades–Negroni* case is one arising under the ADEA, the relief sought in said case was identical to the one in the instant case (i.e. the recovery of plan benefits). Therefore, following this line of thought espoused by the First Circuit, we conclude that, since Plaintiff was retroactively reinstated to the benefits plan, she suffered no adverse employment action cognizable under the provisions of ERISA.

In addition, Plaintiff has also alleged in the Amended Complaint that, "as a result of defendants arbitrary acts in denying Plaintiffs LTD benefits, she is entitled to a retroactive payment of her monthly salary." (*See* Amended Complaint at ¶ 24, Docket # 17). However, Plaintiff's claim for lost salaries related to her ERISA claim must be dismissed because ERISA does not provide for such a remedy. We explain.

ERISA's Section 502(a), 29 U.S.C. § 1132(a), known as the civil enforcement provision, is the only ERISA section which provides plan participants with a vehicle for enforcement and relief. In the pertinent part, the Section reads:

(a) Persons empowered to bring a civil action

A civil action may be brought-

(1) by a participant or beneficiary—

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;(3) by a participant, beneficiary, or fiduciary

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a).

▮ In the instant case, Plaintiff cannot recover her lost salaries under ERISA § 502(a)(1)(B), inasmuch as the remedy provided by that section is meant to secure benefits under the plan. Section 502(a)(1)(B) provides a remedy "to secure benefits under the plan, rather than damages for the breach of the plan." *Hampers v. W.R. Grace*, 202 F.3d 44, 51 (1st Cir.2000); *See also Turner v. Fallon Community*, 127 F.3d 196, 198 (1st Cir.1997). Thus, Plaintiff's salary claim cannot be based on the remedy provided by Section 502(a)(1)(B).

▮ The remedy within § 502(a)(2) is equally unavailing as to Plaintiff's claim for lost salaries. In a case dealing with fiduciary duties, after examining the legislative history of the statute, the Supreme Court of the United States concluded that "[C]ongress did not intend that section [502(a)(2) ] to authorize any relief except

for the plan itself." *Mass. Mutual Life Ins. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Recovery under § 502(a)(2) is limited to relief protecting the integrity of the plan as a whole. *Id.* at 144.

■ The other pertinent ERISA provision authorizes a civil action by a beneficiary "to obtain other appropriate equitable relief" to address violations of ERISA, or to enforce the plan. 29 U.S.C. § 1 132(a)(3)(B). This provision permits relief against a plan administrator for breaches of the fiduciary duties imposed by ERISA. *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Nonetheless, the language of the provision expressly limits its remedy to providing equitable, as opposed to monetary, relief. Thus, Plaintiff cannot recover her alleged lost salaries under this provision. *See Armstrong v. Jefferson,* 30 F.3d 11 (1st Cir.1994) (stating that "the Supreme Court has clearly held that the compensatory damages do not fall within appropriate equitable relief envisioned by § 502(a)(3)"); *Novak v. Andersen Corp.,* 962 F.2d 757, 760 (8th Cir.1992) (stating that "[w]e find nothing in the statutory language to persuade us to interpret other appropriate equitable relief to mean anything other than what it usually means—declaratory or injunctive relief.") Thus, it is patently clear that salaries cannot be recovered under the provision of ERISA.

### Plaintiff's Claims under COBRA

Plaintiff alleges that Defendant violated the Consolidated Omnibus Budget Reconciliation Act (COBRA) by not notifying her of her right to receive continued group health insurance coverage upon her termination from employment. *See* 29 U.S.C. §§ 1161(a), 1163(2), 1 166(a)(4)(A) & (c). However, after examining the record we find that Co-defendant Pfizer did in fact timely notify Plaintiff of her right to continue to receive plan benefits. We explain.

COBRA was enacted in 1986, in response to "reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our nation's hospitals to provide care to those who cannot afford to pay." H.R.Rep. No. 241, 99th Cong., 2d Sess. 44, reprinted in 1986 U.S.C.C.A.N. 42, 579, 622. In "an effort to provide continued access to affordable private health insurance for some of these individuals," H.R.Rep. No. 241, at 44, 1986 U.S.C.C.A.N. at 622, COBRA requires that an employer provide an employee and other "qualified beneficiaries" with the option of electing continued coverage under the same terms of the employer's health plan after the occurrence of a "qualifying event" which would otherwise end an employee's health insurance coverage. 29 U.S.C. § 1161. Among the "qualifying events" mentioned by the statute is the termination of employment. 29 U.S.C. § 1163(2). On the other hand, if the termination does not result in a loss of coverage, it is not considered a "qualifying event" as defined in the statute. I.M. Golub Et. Al., COBRA Handbook ¶ 5.3 (2003 Ed.) (*citing Chacosky v. Hay Group,* 1991 WL 12170 (E.D.Pa.1991)).

■ A qualifying event under COBRA triggers numerous notice obligations. When a "qualifying event" occurs, COBRA mandates that an employer notify the administrator of the plan within thirty (30) days of the event. 29 U.S.C. § 1 166(a)(2). The administrator then has fourteen (14) days to notify the employee of his/her right to continued health coverage under their current plan. 29 U.S.C. § 1 166(a)(4); *see also Smith v. Rogers Galvanizing Co.,* 128 F.3d 1380, 1382 (10th Cir. 1997). When the employer and the administrator of the plan at issue are the same

entity, as in the present case, the employer has forty four (44) days from the date of the qualifying event to notify the participant or qualified beneficiary of his or her right to continued coverage. *See Torres–Negrón v. Ramallo Bros. Printing, Inc.,* 203 F.Supp.2d 120, 126 (D.P.R.2002). "Providing appropriate notice is a key requirement under COBRA." *Lincoln Gen. Hosp. v. Blue Cross/Blue Shield of Neb.,* 963 F.2d 1136, 1139 (8th Cir.1992).

█ In the case at bar, Co-defendant Pfizer contends that it complied with its notification requirements under COBRA. Plaintiff left Pfizer in August 1998 because of a medical condition. Once Plaintiff exhausted her sick leave, her absences were covered by Pfizer's STD plan. Upon exhausting her short-term disability leave, Plaintiff applied for LTD benefits. Inasmuch as Plaintiff was found not to be totally disabled under said plan, on April 6, 1999 MCS informed Plaintiff that she was not eligible to receive long term disability benefits. Given that Plaintiff was denied LTD benefits, she had already exhausted her sick leave, and more than a year had transpired since plaintiff had ceased to work, Co-defendant Pfizer commenced the process of terminating Plaintiff. Thus, on September 22, 1999, Pfizer notified Plaintiff of her forthcoming termination of medical coverage as of October 1, 1999. However, due to an error in the internal notification procedure, Plaintiff's termination was not made effective until February 29, 2000. (*See* Statement of Uncontested Facts at ¶ 31 & 32, Docket # 29). Consequently, the COBRA notice provided on February 24, 2000 was well within the period required by the statute. (*See* Statement of Uncontested Facts at ¶ 33, Docket # 29). **Plaintiff admits as to having received the COBRA notification.** (*See* Statement of Uncontested Facts at ¶ 34, Docket # 29). Thus, even

though Plaintiff insists that she did not receive the COBRA notification after the original letter of termination dated September 22, 1999, the record reveals that once Plaintiff's official termination/voluntary dismissal occurred in February 2000, Pfizer complied with its notification obligations by providing Plaintiff with COBRA notice within the statutory period. Therefore, we find that no COBRA liability can attach under these circumstances.

█ In the alternative, assuming in *arguendo* that Defendants did in fact fail to give appropriate notice under COBRA, we find that the statutory penalty established by COBRA should not be imposed. Under Section 502(c)(1) of ERISA, a penalty of up to $110 per day may be assessed for failure to provide a COBRA notice. 29 U.S.C. § 1 132(c)(1). Courts, however, have been reluctant to impose the statutory penalty in the absence of a showing of bad faith and when the failure to notify has not resulted in any prejudice to the plaintiff. If the plan participant cannot show that he/she has been adversely affected in some significant fashion, the discretionary penalty allowed by the statute is rarely imposed. *See. e.g., Rodriguez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 588–89 (1st Cir.1993) (stating that even though the district court need not find bad faith or prejudice to impose penalties, it may give dispositive weight to these factors); *Bartling v. Fruehauf Corp.,* 29 F.3d 1062, 1068–69 (6th Cir.1994); *Godwin v. Sun Life Assurance Co. of Canada,* 980 F.2d 323, 328–29 (5th Cir.1992); *Wesley v. Monsanto Co.,* 554 F.Supp. 93 (E.D.Mo.1982); *Pollock v. Castrovinci,* 476 F.Supp. 606 (S.D.N.Y.1979).

In the case at bar, we find that no civil penalty should be imposed on Co-defendant Pfizer as there is no evidence in the record indicating that it acted in bad faith or that Plaintiff was prejudiced in any

manner because of said Co-defendant's behavior. Pfizer's benefits manual states that ex-employees who have been determined to have a disability by the Social Security Administration can elect to be retroactively reinstated in Pfizer's medical plan. (Statement of Uncontested Facts at ¶ 35, Docket # 29). On August 18, 2000, Plaintiff sent a letter to Pfizer indicating that the Social Security Administration had determined that she was disabled as of August 29, 1998, and submitting evidence as to the same. As result, Plaintiff was reinstated to Pfizer's medical plan retroactively to March 1, 2000, a day after she officially ceased to work for Pfizer. (Statement of Uncontested Facts at ¶ 36, Docket # 29). Because Plaintiff has been retroactively reinstated to the medical plan and currently enjoys the benefits of the same, she has not suffered a loss of plan benefits at any time pursuant to COBRA. In fact Plaintiff could have requested the reimbursement of her medical expenses, if any, at the time Pfizer changed health plan vendors. (See Statement of Uncontested Facts at ¶ 37, Docket # 29).

Moreover, the record is barren of any indication that Pfizer acted in bad faith in regard to Plaintiff's COBRA notification. If anything, what the record reveals is that Pfizer provided Plaintiff with COBRA notice even before the qualifying event, to wit, when her official termination occurred. Under these circumstances, we find that Plaintiff did not suffer any prejudice as a result of Defendant's alleged failure to comply with its COBRA obligations and that Defendants did not act in bad faith. Therefore, even if Defendants failed to provide adequate COBRA notice, we are of the opinion that no statutory penalty should be imposed under these circumstances.

Finally, Plaintiff has also claimed in the Amended Complaint that, because of Co-defendants Pfizer's alleged failure to provide COBRA notice to her, she suffered mental distress and other damages estimated in an amount not less than $10,000.00. (Amended Complaint at ¶ 36, Docket # 17). However, because COBRA does not provide for such a remedy, this claim should also be dismissed. We explain.

The provisions of COBRA, just as ERISA, do not provide for damages. *Torres–Negrón,* 203 F.Supp.2d at 126. In fact, courts have specifically denied awards for emotional distress for actions brought under the statute. *See Id. (citing Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321 (5th Cir.1992)) (denying damages for mental distress and anguish); *United Steelworkers of Am., AFL–CIO–CLC v. Connors Steel Co.,* 855 F.2d 1499 (11th Cir.1988); *Powell v. Chesapeake & Potomac Tel. Co.,* 780 F.2d 419 (4th Cir.1985); *DiSabatino v. DiSabatino Bros., Inc.,* 894 F.Supp. 810 at 815–816 (D.Del.1995); *Phillips v. Riverside, Inc.,* 796 F.Supp. 403, 411 (E.D.Ark.1992). Thus, since COBRA does not provide for an emotional damages claim, Plaintiff's claim will be dismissed.

### Plaintiff's Claim under Law 80

Finally, Plaintiff alleges that her discharge was without cause and that she is therefore, entitled to the indemnity provided by Puerto Rico's Act No. 80 of May 30, 1976, as amended, 29 L.P.R.A. §§ 185a *et seq.* ("Law No. 80"). In its relevant part, Law No. 80 provides:

> Every employee in commerce, industry or any other business or work place... in which he/she works for compensation of any kind, contracted without a fixed term, who is discharged from his/her employment without good cause, shall be entitled to receive from his/her employer, in addition to the salary he/she may have earned:

(a) The salary corresponding to one month, as indemnity, if he/she is discharged within the first five (5) years of service; the salary corresponding to two (2) months if he/she is discharged after five (5) years and up to fifteen (15) years of service; the salary corresponding to three (3) months if he/she is discharged after fifteen (15) years of service.

(b) An additional progressive compensation equal to one (1) week for each year of service . . .

29 L.P.R.A. § 185a. "Since its original enactment, this legislation sought to strike a balance between the freedom of choice inherent to an employer and the social need to do away with arbitrary terminations of employment." *Vargas v. Royal Bank of Canada,* 604 F.Supp. 1036, 1039 (D.P.R.1985). To this end, there must be a clear justification, or good cause, to dismiss an employee without compensating him for his/her years of service. *Quirós v. I.T.T. Western Hemisphere Directories, Inc.,* 108 D.P.R. 536, 547 (1979); *Mercedes Bus Line v. Tribunal De Distrito,* 70 D.P.R. 690, 1949 WL 7045 (1949).

██ Puerto Rico's Non-occupational Disability Law or SINOT, Act No. 139 of June 26 1968, 11 L.P.R.A. § 201, establishes that an employer must reserve the employment of an individual for one (1) year, from the onset of a non-occupational disability. However, the Supreme Court of Puerto Rico has established that there is just cause for a dismissal under Law No. 80 when an employee does not return to work following the year of reserve. *Segarra Hernández v. Royal Bank de P.R.,* 145 D.P.R. 178 (1998). After all, employers have significant interests in insuring that each employee's work continues at a steady pace. *Caraballo v. P.R. Tel., Inc.,* 178 F.Supp.2d 60, 68 (D.P.R.2001). "[R]eliability and promptness are important considerations in maintaining a work force." *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1115 (7th Cir.1992). Obviously, an employee who is absent from work cannot perform the essential functions of his/her position. *Nowak v. St. Rita H.S.,* 142 F.3d 999, 1003 (7th Cir.1998).

The uncontested facts of the present case reveal that Plaintiff left Pfizer in August of 1998 and never returned to work. (Statement of Uncontested Facts at ¶ 2, Docket # 29). Once the one year of reserve had transpired without Plaintiff returning to work, Pfizer had no legal obligation to hold her position. Pfizer terminated Plaintiff on February 2000, **a year and six months** after Plaintiff had first become absent from work. Thus, we find that Co-defendant Pfizer acted within the statutory guidelines of Law No. 80; therefore, Plaintiff does not have a viable cause of action since there was just cause for her dismissal.

## Conclusion

For the reasons set herein, all of Plaintiff's claims are **DISMISSED WITH PREJUDICE.** Judgment will be entered accordingly

**SO ORDERED.**